IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| VALERIE PAPACONSTANTINOU-BAUER, M.D., | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:22cv178-MHT (WO) |
| JACKSON HOSPITAL & CLINIC, INC., and REZA D. SEIRAFI, M.D., | ) ) ) ) | |
| Defendants. | ) | |

OPINON AND ORDER

Plaintiff Valerie Papaconstantinou-Bauer, M.D.,
filed this lawsuit asserting a bevy of claims against two
defendants: her former employer, Jackson Hospital &
Clinic, Inc., and its Chief of Surgery, Reza D. Seirafi,
M.D. Against both the hospital and Seirafi, Bauer brings
state claims of intentional infliction of emotional
distress and invasion of privacy.[1]  Against the hospital

---

1. The court refers to plaintiff as Bauer rather than
her full hyphenated last name, Papaconstantinou-Bauer,
because she has called herself Bauer in her complaint and
subsequent briefing.

alone, she brings federal claims of sex discrimination, sex harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and state claims of fraud in the inducement; breach of contract; and negligent and wanton hiring, training, supervision, and retention.   And against Seirafi alone, she brings state claims of interference with contractual or business relations and assault and battery.   The court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f)(3) (Title VII), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

Before the court is the hospital and Seirafi's motion to stay the proceedings and compel arbitration.   They argue that, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, an arbitration agreement requires that Bauer's claims against the hospital be submitted to binding arbitration rather than litigated in court and that, although Seirafi was not a signatory to the arbitration agreement, the claims against him are

2

so closely intertwined to those against the hospital that they must be arbitrated too.

Bauer opposes the motion. She contends, among other things, that she is no longer bound by the arbitration provisions in her employment agreement because her employment has been terminated and that the recently enacted Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA), Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401, 402), renders the arbitration agreement unenforceable in this case. She also contends that, regardless of how closely intertwined her claims against Seirafi are to those against the hospital, the terms of the employment agreement prohibit Seirafi from compelling arbitration of the claims against him.

Upon consideration of the applicable law, the record, and the arguments presented by the parties, the motion to stay and compel arbitration will be granted as to both the hospital and Seirafi.

3

## I. BACKGROUND

Bauer is a female physician who is board certified for the practice of general surgery as well as colorectal surgery.  Jackson Hospital operates as a hospital and clinic in Montgomery, Alabama.  Seirafi is the Chief of Surgery at Jackson Hospital.

In the summer of 2020, the hospital recruited Bauer to be a practicing physician and surgeon.  Bauer signed the hospital's employment contract in August of that year, moved from Texas, and began working in December. The employment contract included the following provisions regarding arbitration:

"27. Arbitration; ...

(a) *Agreement to Arbitrate*. Any controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity thereof, will be determined by arbitration in Montgomery County, Alabama ...."

Employment Agreement (Doc. 8-1) at 20-21.

Upon her hiring, Bauer became the first and only female general surgeon at the hospital and the only surgeon at the hospital who was board certified in colon

4

and rectal surgery.  She outlines in her complaint many instances of adverse treatment during her employment, much of which she alleges was because of her sex.  She explains that she was refused adequate equipment, materials, and staff throughout her employment; that she was berated by male physicians, including Seirafi; and that her complaints were ignored or prompted retaliation. Bauer contends that these conditions set her up for failure and that the male physicians at the hospital did not receive such treatment.

Eventually, Seirafi met with hospital administration and threatened to quit if Bauer were not fired immediately.  On February 25, 2021, Bauer was told that the hospital was terminating her employment "without cause" because she was "not a good fit."  Complaint (Doc. 1) at 20.  After her termination, Jackson Hospital replaced Bauer with a male surgeon who is not board certified in colon and rectal surgery.

On June 18, 2021, Bauer filed a charge of discrimination with the Equal Employment Opportunity

Commission (EEOC). The EEOC issued a dismissal and notice of rights on the charge, which Bauer's counsel received by email on or about January 25, 2022. Bauer filed her lawsuit in this court on April 15, 2022.

As stated, the hospital and Seirafi filed a motion to stay the proceedings and compel arbitration, arguing that Bauer's claims must be submitted to arbitration.

## II. LEGAL STANDARD

The FAA provides that:

> "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. This provision reflects the "fundamental principle that arbitration is a matter of contract," and, thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations

6

omitted).  "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985).  To answer this question, the court must apply state contract principles, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), to make two preliminary determinations: first, whether there is a valid agreement to arbitrate, and, second, whether the dispute in question falls within the scope of that agreement.  *See Dean Witter Reynolds, Inc. v. McDonald*, 758 So. 2d 539, 542 (Ala. 1999).

If the court finds that there is a valid agreement to arbitrate, and that the claim at issue falls within the scope of the arbitration clause, it must determine whether the underlying contract is one that "evidence[es] a transaction involving commerce" within the meaning of the FAA.  9 U.S.C. § 2 (2000).

However, not all claims are subject to arbitration. Congress may preclude a waiver of judicial remedies for

7

certain statutory rights, but "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

In applying the standards above, the court views the facts in the light most favorable to the nonmovant. *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021).

Finally, if the court finds that there is a binding and enforceable arbitration clause pursuant to the FAA as to a claim at issue, it is required to order the parties to submit that claim to arbitration. *See* 9 U.S.C. § 4. If a party to the agreement requests a stay of litigation pending said arbitration, the court is statutorily bound to grant the stay. *See* 9 U.S.C. § 3.

## III. DISCUSSION

### A. Validity and Scope of the Arbitration Agreement

Bauer does not challenge the validity of her overall employment agreement with Jackson Hospital or the

8

arbitration provisions found within it. Indeed, her breach-of-contract claim relies on the validity of her employment agreement. Rather, she challenges the scope of the arbitration provision. She argues that the provision does not survive the termination of her employment. In support of this position, she relies on the absence of a clause in the employment agreement that explicitly provides for the survival of the arbitration requirement after termination. She highlights that other sections of the agreement contain such survival clauses. For instance, the section regulating the possession and confidentiality of medical records ends with the following sentence: "This Section 11 will survive termination of this Agreement." Employment Agreement (Doc. 8-1) at 12. Section 14(e), which prohibits an employed physician from disparaging or intending to discredit the hospital, includes an identical survival clause: "This Section 14(e) will survive the termination of this Agreement." *Id.* at 15. As do Sections 14(f), 14(g), 25, and 30.

9

The inclusion of such survival clauses throughout the contract, Bauer suggests, supports an inference that the absence of such a clause in other sections is intentional and meaningful. *See Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 181, 184 (Ala. 2010) (calling such an inference an application of "the legal maxim *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)"). In other words, the drafters' use of survival clauses in certain sections of the contract demonstrates that, had the drafters wanted another section of the contract to survive termination, they would have said so. This may be so, but the section of the employment agreement governing arbitration does make clear that the arbitration clause survives termination.

"When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state." *Id.* at 180. Here,

§ 27(a) broadly states that: "*Any* controversy or claim arising out of or relating to this Agreement, or the breach, *termination* or validity thereof, will be determined by arbitration." Employment Agreement (Doc. 8-1) at 20 (emphasis added). The termination of Bauer's *employment* clearly "aris[]es out of or relat[es]" to the termination of her *employment agreement*, and thus the termination of her employment is subject to arbitration under the agreement.[2] The inclusion of a separate, explicit survival clause is unnecessary.

## B. An Agreement Involving Commerce Under the FAA

Bauer briefly seems to challenge the FAA's applicability by arguing that the employment agreement did not involve interstate commerce.

The term "involving commerce" in the FAA is the "functional equivalent of the more familiar term

---

2. Bauer does not challenge the hospital's assertions that all of her claims are otherwise within the scope of the arbitration clause because they "aris[e] out of or relat[e]" to the employment agreement. Employment Agreement (Doc. 8-1) at 15.

11

'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)).  A party seeking to enforce an arbitration agreement under the FAA need show only "that the transaction turns out, in fact, to have involved interstate commerce, even if the parties did not contemplate an interstate commerce connection" when entering the agreement.  *Jenkins*, 400 F.3d at 874 (internal quotation marks omitted).

The hospital has offered multiple ways in which the employment agreement involved interstate commerce. First, because Bauer moved from Texas to Alabama to perform under the terms of the agreement, she became a "person[] ... in interstate commerce." *Selma Med. Ctr. v. Fontenot*, 824 So. 2d 668, 675 (Ala. 2001) (quoting *United States v. Lopez*, 514 U.S. 549, 558 (1995)). Furthermore, the conduct of the hospital itself, which is facilitated by the employment of doctors through

similar employment agreements, has a considerable effect on interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948) ("Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'"). This is evident, as the hospital explains, through

> "the recruitment and hiring of physicians and administrators from outside Alabama; employing physicians that live outside the state of Alabama; providing medical treatment, both in-person and virtually, to out-of-state patients; billing out-of-state patients and receiving payments from out-of-state insurers; procuring medical devices, supplies and equipment from many out-of-state vendors; [and] accepting credit card payments for treatment."

Motion To Stay and Compel Arbitration (Doc. 8) at 9.

Bauer does not dispute any of these assertions. Instead, she merely points out that Jackson Hospital is

13

located in Alabama and has a designated service area that is contained within the State. These facts are insufficient to overcome the hospital's substantial showing that the employment agreement involves interstate commerce within the meaning of the FAA.

### C. The Ending Forced Arbitration Act

Bauer asserts that, even if the arbitration clause in the employment agreement is otherwise enforceable, the EFAA allows her to void the clause in this case because her lawsuit includes claims of sexual harassment.

The EFAA directly amended the FAA to allow persons alleging sexual assault or sexual harassment to forgo arbitration. The Act provides, in pertinent part:

> "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, ... no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."

**14**

§ 402(a).  However, the EFAA is not retroactive.  It applies to only a "dispute or claim that arises or accrues on or after [March 3, 2022]."  Pub. L. 117-90, § 3, 136 Stat. 28 (2022).

The parties disagree about whether Bauer satisfies this temporal requirement.[3]  Almost all the alleged facts relevant to this case occurred before March 2022.  Bauer was hired in August 2020.  She was fired in February 2021.  She filed a charge of discrimination with the EEOC in June 2021, and the EEOC issued a dismissal and notice of rights on the charge in January 2022.  Nonetheless, Bauer argues that the EFAA applies because she did not

---

3.  The hospital also argued that the EFAA should not apply in this case because, despite using the term "harassment" at times to describe her treatment by, the facts that Bauer alleges do not constitute a claim of sexual harassment.

The question of what constitutes a claim of sexual harassment is complicated.  However, the court need not, and does not, decide this issue because the EFAA is clearly otherwise inapplicable for the reasons stated the court.

file this lawsuit until April 2022, after the Act became
effective.

Bauer's argument for how to interpret the phrase "any
dispute or claim that arises or accrues" is not entirely
clear.  She seems to take the general position that the
EFAA applies to any dispute that arises and any claim
that arises *or* accrues, after March 3, 2022.  While Bauer
notes that her sexual harassment claim may have accrued
upon her termination in February 2021, she argues that a
dispute did not arise until she filed this lawsuit in
April 2022.[4]  The hospital, on the other hand, does not
engage with the complexity of the statutory language.  It
simply argues that, because Bauer's employment was
terminated in February 2021, her "claims in this case
arose prior to March 3, 2022," and thus, the EFAA is

---

4. While Bauer discusses both when her disputes with
the hospital arose and when her claims accrued, she does
not make an argument about when her claims might have
arisen.  However, she does argue in passing that a claim
in general "does not 'arise' until such time as the
plaintiff files a pleading seeking relief on that claim."
Plaintiff's Response to Defendants' Reply to Compel
Arbitration (Doc. 18) at 9.

inapplicable.  Reply in Support of Motion to Stay and Compel Arbitration (Doc. 14) at 6.

Federal courts have not yet had much opportunity to interpret the EFAA.  Indeed, this court could not find a single opinion issued by any United States Court of Appeals that cites the Act at all. The relatively few district court decisions that have interpreted the Act have generally settled upon reading the statute's temporal requirement to say that "'disputes ... arise[ ]' and 'claims ... accrue[ ].'" *Hodgin v. Intensive Care Consortium, Inc.*, No. 22-81733-CV, 2023 WL 2751443, at *2 (S.D. Fla. Mar. 31, 2023) (Middlebrooks, J.).[5]  This is the most reasonable reading of the statutory language.  While it would seem natural in the context of the law to say that a claim could both arise and accrue, it would be unusual to say

_____

5. *See also Barnes v. Festival Fun Parks, LLC*, No. 3:22-CV-165, 2023 WL 4209745, at *10 (W.D. Pa. June 27, 2023) (Haines, J.); *Silverman v. DiscGenics, Inc.*, No. 222CV00354JNPDAO, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023) (Parrish, J.).

17

that a dispute accrues.  Because there is no reason to think that Congress intended for both verbs to apply to "claim" but not to "dispute," this court also adopts the view that the EFAA applies to disputes that arise or claims that accrue on or after March 3, 2022.  Under this view, both parties' assertions regarding when a claim arises are misguided.  The operative questions are, first, when did Bauer's claim accrue and, second, when did her dispute with the hospital arise.

As Bauer seems to acknowledge, her sexual-harassment claim accrued, at the latest, on the day her employment was terminated--February 25, 2021. This is when she had a "complete and present cause of action." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *see also Green v. Brennan*, 578 U.S. 547, 556 (2016).  Other district courts that have interpreted the EFAA also settled on this interpretation of claim accrual.[6]  Because Bauer's claims

---

6. *See, e.g.*, *Delo v. Paul Taylor Dance Found., Inc.*, No. 22-CV-9416, 2023 WL 4883337, at *8 (S.D.N.Y. Aug. 1, 2023) (Abrams, J.); *Watson v. Blaze Media LLC*, No. 3:23-CV-0279-B, 2023 WL 5004144, at *3 (N.D. Tex. Aug. 3,

accrued prior to the EFAA's becoming effective, the Act will not apply unless her dispute with the hospital arose after March 2, 2022.

As previously noted, Bauer's main contention is that a "dispute" did not "arise" until she filed this lawsuit in April 2022, after the EFAA became effective. She understands a "dispute" as requiring an adversarial posture or disagreement between the parties and not just the existence of an injury. Such an understanding is consistent with the ordinary meaning of the word "dispute". *See, e.g.*, "Dispute." Merriam-Webster's Unabridged Dictionary, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/dispute (last visited Oct. 16, 2023) ("verbal controversy : strife by opposing argument or expression of opposing views or claims : controversial discussion : debate").

---

2023) (Boyle, J.); *Betancourt v. Rivian Auto., LLC*, No. 22-1299-JES-JEH, 2023 WL 5352892, at *4 (C.D. Ill. Aug. 21, 2023) (Shadid, J.); *Newcombe-Dierl v. Amgen*, No. CV222155DMGMRWX, 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022) (Gee, J.); *Walters* v. *Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022) (Cote, J.).

Thus, according to Bauer, the acts of sexual harassment and discrimination that she alleges do not themselves constitute a dispute, but rather the dispute arose only once she compelled the hospital to defend itself in this lawsuit.

However, even assuming that Bauer's definition of "dispute" were correct, it does not follow that the dispute in this case arose only upon her filing the complaint.  Rather, a dispute would have arisen, at the latest, when Bauer pursued her charge of discrimination with the EEOC.  At that point, Bauer had formally brought her allegations to a forum with the potential to resolve the issue and was thus clearly at odds with her employer. *See Hodgin*, 2023 WL 2751443, at *2 (finding that, if such a definition of "dispute" were applied, a dispute arose when the plaintiff filed charges with a relevant agency prior to filing a lawsuit); *Silverman*, 2023 WL 2480054, at *2 (same).

Bauer disagrees.  She argues that, because the parties could have reached a settlement once the

20

administrative process with the EEOC commenced, there was no dispute until after the agency delivered a right-to-sue letter and Bauer actually sued.  This is unpersuasive.  Filing a charge of discrimination with the EEOC is a required step before filing a lawsuit, and such charges allow the EEOC to compel an employer to respond and defend itself.  *See What You Can Expect After You File a Charge*, EEOC, https://www.eeoc.gov/what-you-can-expect-after-you-file-charge (explaining the administrative process after charges are filed); *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022).  The possibility of a settlement does not negate the adversarial posture established once the charge is filed with the EEOC; if it did, not even a lawsuit would necessarily present a dispute since settlement is always possible during litigation.

Because Bauer pursued and concluded her charge of discrimination with the EEOC prior to the EFAA becoming

effective, the Act is inapplicable to Bauer's claims.[7]
Accordingly, Jackson Hospital, the signatory to the
arbitration agreement, is entitled to enforce the
agreement pursuant to the FAA.

### D. Can Seirafi Enforce the Arbitration Agreement?

Having established that Bauer's claims against the
hospital are subject to arbitration in accordance with
the employment agreement's arbitration provisions, the
court turns to the final question of whether Seirafi may
also enforce the arbitration provisions with respect to
Bauer's claims against him, even though he is not a
signatory to the employment agreement.

Because arbitration is a matter of contract, a party
cannot be required to submit to arbitration any dispute

---

7. Bauer's definition of "dispute" offers her the
most generous possible interpretation of the EFAA's
temporal requirement. *Compare with Castillo v. Altice
USA, Inc.*, No. 1:23-CV-05040, 2023 WL 6690674, at *4
(S.D.N.Y. Oct. 12, 2023) (Rochon, J.); *Barnes*, 2023 WL
4209745, at *9-12. Because, in this case, the EFAA would
still not apply under such an interpretation, the court
need not, and does not, decide whether Bauer's definition
of "dispute" is correct.

22

that she has not agreed to arbitrate. *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). A party typically manifests her "assent to arbitrate a dispute by signing the contract containing the arbitration provision." *Ex parte Stamey*, 776 So. 2d 85, 88-89 (Ala. 2000). Thus, as a general rule, nonsignatories to an arbitration provision cannot rely on that provision to compel the arbitration of claims that a signatory raises against them. However, there are exceptions to this rule such as "agency, alter ego, third-party beneficiary, and intertwining/equitable estoppel." *Ameriprise Fin. Servs.* v. *Jones*, 195 So. 3d 263, 266 (Ala. 2015). Seirafi relies on one such exception--the "intertwining" theory of equitable estoppel, "under which a nonsignatory can enforce an arbitration provision when the claims against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations." *Locklear Auto. Grp., Inc.* v. *Hubbard*, 252 So. 3d 67, 85 (Ala. 2017)

(quoting *Stamey*, 776 So. 2d at 89); *Ex parte Tony's Towing, Inc.*, 825 So. 2d 96, 98 (Ala. 2002).

Bauer responds that such an exception is irrelevant because a provision of her employment agreement with the hospital expressly prohibits Seirafi from compelling arbitration. She points to § 31(m) of the employment agreement, which states that, "No one not a party to this agreement will be deemed or otherwise treated as a beneficiary or third-party beneficiary hereunder." Employment Agreement (Doc. 8-1) at 19. Yet, this is not responsive to Seirafi's intertwining equitable-estoppel argument, as Seirafi does not assert that he should be treated as a third-party beneficiary to the employment agreement.[8] Therefore, the question becomes whether the intertwining theory applies.

---

8. There is another exception, which has also been referred to as equitable estoppel, that treats a nonsignatory as a third-party beneficiary (regardless of whether the nonsignatory actually is such a beneficiary) and allows a signatory to compel the arbitration of claims against them by the nonsignatory if those claims rely upon the existence of the contract containing the arbitration provision. *See Custom Performance, Inc. v.*

In answering that question, the court must first determine whether the arbitration provisions in the employment agreement are written in broad enough language to encompass claims against a nonsignatory, such as Seirafi.  The Alabama Supreme Court has recognized as sufficiently broad an agreement that requires the arbitration of "all disputes or claims or controversies arising from or relating to this contract or the parties thereto". *Locklear Auto. Grp.,* 252 So. 3d at 86 (original capitalization omitted) (quoting *Stamey*, 776 So. 2d at 89)); *see also Locklear Auto. Grp., Inc.*, 252 So. 3d at 89 (noting that the following language was sufficiently broad: "The undersigned agree that all disputes ... resulting from or arising out of or relating to or concerning the transaction entered into ... shall

*Dawson*, 57 So. 3d 90, 97-99 (Ala. 2010).  There is also a distinct third-party-beneficiary exception that can bind a nonsignatory to arbitration if they qualify as a third-party beneficiary.  *Id*. at 97.  While § 31(m) of the employment agreement arguably might foreclose both of these exceptions, it presents no obstacle to the application of the intertwining theory upon which Seirafi relies.

be submitted to BINDING ARBITRATION.") (citing *Volkswagen Group of America, Inc*. v. *Williams*, 64 So. 3d 1062, 1064 (Ala. Civ. App. 2010)).  That court also held that, when such an arbitration provision "contained no references to the parties" in a way that would "impose a limitation on what claims would be arbitrated," the language was sufficient to indicate that "the party resisting arbitration ha[d] assented to the submission of claims against nonparties--claims that otherwise would fall within the scope of the arbitration provision--to arbitration." *Stamey*, 776 So. 2d at 89.

The arbitration provision in this case states, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity thereof, will be determined by arbitration."  Employment Agreement (Doc. 8-1) at 15, § 27(a).  This language does not limit the scope of arbitrable claims to only those between the hospital and Bauer.  Indeed, this language is just as broad as the language above that the Alabama Supreme Court approved.

Therefore, Seirafi clears this first hurdle to applying the intertwining doctrine.

The next step is to determine whether the particular claims brought by Bauer against Seirafi are "intimately founded in and intertwined with" the underlying contract and with Bauer's claims against the hospital, the signatory to the arbitration agreement. *Locklear Auto. Grp.*, 252 So. 3d at 90; *Ex parte Stamey*, 776 So. 2d at 89. The application of the intertwining doctrine "is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Southern Energy Homes, Inc.* v. *Kennedy*, 774 So. 2d 540, 545 (Ala. 2000) (alteration in original) (quoting *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

The court finds that Bauer's claims easily meet this standard. Each of Bauer's claims against the hospital depends in some way upon the alleged misconduct of

27

Seirafi, and it is largely this same misconduct that forms the basis for her claims against Seirafi as well. Bauer alleges that Seirafi was involved in her recruitment and hiring at the hospital; that much of the adverse treatment she experienced over the course of her employment came from him; and that he conspired with or otherwise worked to convince the hospital to terminate her employment. In other words, all of Bauer's claims against both the hospital and Seirafi are intertwined with each other, and all relate to her employment with the hospital, and thus also her employment agreement.

For the above reasons, the intertwining theory of equitable estoppel applies, and Seirafi can compel the arbitration of Bauer's claims against him alongside the arbitration of the claims against the hospital.


***

Accordingly, it is ORDERED that:

**28**

(1) Defendants Jackson Hospital & Clinic, Inc. and Reza D. Seirafi's motion to stay and compel arbitration (Doc. 8) is granted.

(2) Plaintiff Valerie Papaconstantinou-Bauer is compelled to pursue her claims against both defendants Jackson Hospital & Clinic, Inc. and Seirafi through arbitration as set out by the terms of the employment agreement.

(3) This case is stayed and administratively closed pending arbitration.

DONE, this the 18th day of March, 2024.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE